EDWARD MEDLINSKY & others *vs.* PREMIUM CUT BEEF COMPANY & another.

Middlesex.   March 5, 1946. — June 29, 1946.

Present: FIELD, C.J., LUMMUS, QUA, DOLAN, & SPALDING, JJ.

*Executor and Administrator,* Real estate of decedent.   *Equity Jurisdiction,* Accounting.   *Equity Pleading and Practice,* Appeal.   *Unjust Enrichment.   Corporation,* Corporate entity, Stockholder.

In a suit in equity against a corporation, which, without knowledge or consent of the owner of registered land, had received and registered a deed thereof, the defendant, after the owner's death, was required to convey the land to the owner's heirs at law as tenants in common according to their proportionate interests as heirs subject to enforceable rights of creditors of his estate, and to pay to the heirs rent received by the defendant from a tenant after the owner's death and the value of its own occupancy of the premises less expenses thereof paid by it during that period, with interest; and to pay to the administrator of the owner's estate rent so received by it during the owner's life after the registration of the deed together with the value of its own occupancy less expenses of the real estate paid by it during that period, with interest.

Money paid by a corporation for repairs of real estate owned by its principal stockholder during his life, found not to have been a gift by the corporation, resulted in an enrichment of the real estate, and in a suit brought after the owner's death, in which the corporation, because without right it had received a deed of the real estate during the owner's life, was required to convey it to the owner's heirs at law, the corporation was entitled to repayment by the owner's administrator of the sums so spent by it for repairs and was a creditor of the owner's estate with the same rights respecting the real estate as other creditors.

The mere fact that a stockholder in a corporation, who had assented to payments by the corporation for repairs of real estate which it occupied and which was owned by his father, the principal stockholder, after the death of his father became sole owner of the stock of the corporation, did not make the son identical with the corporation nor

preclude the administrator of the father's estate from being required
to reimburse the corporation for the amount so paid by it.

The filing of an appeal from a final decree in equity within twenty days
after the actual entry of the decree was seasonable although the decree
was entered "as of" a date more than twenty days before the filing
of the appeal.

BILL IN EQUITY, filed in the Superior Court on September
22, 1941, by Edward Medlinsky, Lizzie Karp, widow of
William Karp, and Edward Karp, Hyman Karp, Rose
Rogers, Emma Barth, Gertrude Dane, and Ronnie Soreff,
next of kin of William Karp, to whom was added by amend-
ment Edward Karp, administrator of the estate of William
Karp.

After the decision by this court reported in 317 Mass.
25, the case was recommitted to a master. By order of
*Hammond*, J., an interlocutory decree overruling an excep-
tion by the plaintiffs to the master's report and confirming
the report was entered, and a final decree was entered on
October 19, 1945, "as of October 1, 1945," from which the
defendants appealed on November 6, 1945.

A motion by the plaintiffs to dismiss the appeal of the
defendants was denied by *Dillon*, J. The plaintiffs ap-
pealed from such denial.

*R. B. Walsh*, for the plaintiffs.

*A. Barlofsky*, for the defendants.

LUMMUS, J. When this case was here before (317 Mass.
25), the final decree was reversed, and the case was re-
manded for further findings of fact, which have now been
made. The facts appear in reports of a master, which
have been confirmed.

William Karp, who died intestate on August 20, 1941,
owned twelve out of the twenty shares of stock in the de-
fendant corporation. His wife Lizzie owned four shares
and his son Maurice owned the remaining four shares.
William was president and Maurice was treasurer. William
dominated the corporation, and both Lizzie and Maurice
permitted him to do so.

Ever since 1915 or thereabouts, William owned land with
a business block and a tenement block thereon, on Gorham
Street in Lowell, although the title stood in the name of

Lizzie. Most of the first floor of the business block was occupied by the Lowell Beef Company, which was owned by William. When the defendant corporation was incorporated "prior to October 10, 1939," it took space on the first floor, adjoining the Lowell Beef Company, and paid rent to William. But the city of Lowell had acquired and foreclosed a tax title upon the land and buildings, and sold them on November 24, 1939, to the plaintiff Medlinsky, who bought as the undisclosed agent of William, who advanced the purchase price of $900 out of money borrowed by him from the defendant corporation. But that fact gave the defendant corporation no beneficial interest in the real estate purchased. *Medlinsky* v. *Premium Cut Beef Co.* 317 Mass. 25, 33. William feared to take title in his own name because of his creditors.

On October 10, 1939, all the stockholders in the defendant corporation transferred their stock to Edward Karp, a son of William, as trustee, to hold for the benefit of the former stockholders until the death of William and then to convey all the stock to Maurice if he should then be living, he agreeing to pay to Lizzie $10 a week thereafter during her life.

After the purchase, ostensibly by Medlinsky, on November 24, 1939, extensive repairs were made upon the real estate and were paid for out of the funds of the defendant corporation with the consent of William and Maurice. That corporation continued to pay rent to William until November, 1940. In February, 1940, while the repairs were being made, Maurice asked William to have Medlinsky convey the real estate to the defendant corporation, because of its large investment in the repairs. After some protest, William caused a deed from Medlinsky to the defendant corporation to be executed, but William took it into his own possession, and finally determined not to register it. But Maurice on May 29, 1940, found it in the safe in the office of the defendant corporation, and took it and registered it without the knowledge or consent of William, and later, when William discovered the fact and demanded a reconveyance, refused to permit any reconveyance. The premises are

registered land, and the title now stands registered in the name of the defendant corporation through the act of Maurice just described.

In this bill the plaintiffs seek, for the benefit of the heirs of William, of whom the defendant Maurice is one, the cancellation of the certificate of title and the retransfer of the real estate. Our former decision denied repayment to the defendant corporation of $1,500 borrowed from it by William, because such repayment was not within the scope of the counterclaim. The counterclaim has not since been amended, and consequently that decision stands. The final decree from which the present appeal was taken by the defendants was right in substance in denying to the defendant corporation title to the real estate, because the finding is that William never expressly or impliedly agreed to cause it to be conveyed to the defendant corporation. The defendants do not argue to the contrary. The title must be restored to the heirs of William, since he died intestate.

The heirs of William are entitled also to the balance of the rents received by the defendant corporation since the death of William on August 20, 1941, plus the value of the occupancy by the defendant corporation itself since that date, minus the expenses of the real estate paid by it since that date. The master's reports and the final decree appealed from were inaccurate in making no distinction between items arising before the death of William, for which the defendant corporation must account to the administrator of his estate, and items arising after the death of William, for which the defendant corporation must account to his heirs. *Beardsley* v. *Hall*, 291 Mass. 411, 414. *Patrick* v. *Dunbar*, 297 Mass. 40, 43. *Nunes* v. *Rogers*, 307 Mass. 438, 443. *Roper* v. *Murphy*, 317 Mass. 176. *Brigham* v. *Hunt*, 152 Mass. 257. *Clark* v. *Seagraves*, 186 Mass. 430. Compare G. L. (Ter. Ed.) c. 202, § 4A, inserted by St. 1933, c. 129. Splitting the account, as we must, as of the death of William into two parts, one composed of items arising before his death and the other composed of items arising afterwards, it appears that each part would show a

balance against the defendant corporation. In entering the final decree after rescript the accounting, including interest, should of course be brought down to the date of that decree. *Boyer* v. *Bowles*, 316 Mass. 90. *S. M. Spencer Mfg. Co.* v. *Spencer*, 319 Mass. 331, 340. *Godard* v. *Babson-Dow Manuf. Co.* 319 Mass. 345, 349.

For the reason already stated and for another to be stated, the final decree appealed from is reversed. The new final decree after rescript shall order the defendant corporation to deliver to the plaintiffs a duly executed deed of conveyance of the real estate described in the bill, running to the heirs of William Karp, naming them, as tenants in common in the proportions in which they take as heirs, but subject to the now enforceable rights of the creditors of said William Karp to the same extent as though he had died intestate seised of said real estate, and shall order the defendant corporation also to deliver to the plaintiffs the owner's duplicate certificate of registration of title to said real estate, in order to enable the plaintiffs to cause to be registered in the names of said heirs as good a title to said real estate as Medlinsky held. The new final decree shall also order the defendant corporation to pay to each of the several heirs of William Karp his proportionate share of the balance due from the defendant corporation upon an accounting of items arising since the death of William, with interest. That accounting, including the interest, must of course be brought down to the date of the entry of the new final decree after rescript.

On the other hand, the final decree appealed from omitted the requirement of the earlier final decree that the defendant corporation be repaid the money paid out of its treasury for repairs upon the real estate in question, then owned beneficially by William Karp. That money was used to enrich the real estate, the title to which is to be vested in the heirs of William Karp. We think that the estate of William Karp owes to the defendant corporation the repayment of that money with interest to the entry of the final decree after rescript.

It was found that the use of the money of the defendant

corporation for repairs on the real estate was not a gift from that corporation to William with the assent of all the stockholders, for the reason that there is no evidence of assent on the part of Edward, who became trustee of all the stock on October 10, 1939, for the benefit of the pre-existing stockholders during the life of William, or on the part of Lizzie who retained a beneficial interest in four shares until the death of William, which did not take place until long after the repairs had been completed and the money used. The plaintiffs contend that since Maurice, upon the death of William on August 20, 1941, became the equitable owner and probably the legal owner of all the stock, his earlier assent to the use of corporate funds for such repairs prevents any award to the defendant corporation upon its counterclaim, for such an award would now inure to the benefit of Maurice. But now that the corporation is to be deprived of the real estate, it cannot be made whole except by a decree in its favor upon its counterclaim. It may need the money for the satisfaction of its own creditors. The present ownership of all the stock by Maurice does not make him identical with the corporation. *M. McDonough Corp.* v. *Connolly*, 313 Mass. 62, 66. *Leventhal* v. *Atlantic Finance Corp.* 316 Mass. 194, 198. We see nothing in the findings that deprives the defendant corporation of its right to reimbursement of its money used for repairs, with interest to the date of the final decree after rescript.

That money was owed to the defendant corporation by William Karp, and is a debt of his estate. Edward Karp, the administrator of his estate, who was appointed on November 24, 1941, was made a party plaintiff on June 15, 1942, and an order for repayment of that money with interest may properly be entered against him in his capacity as administrator in the new final decree after rescript. That order may be enforced by like proceedings as in the case of any other debt of the estate, and the real estate in question in this case is as liable to be sold to satisfy that order as to satisfy any other debt of the estate. But from the amount paid for such repairs there should be deducted

the amount owed by the defendant corporation to William Karp for rents collected from tenants and for occupancy of the real estate by the defendant corporation, over and above expenses paid by it, all during the lifetime of William Karp. The new final decree after rescript shall establish the obligation of the estate of William Karp to pay to the defendant corporation the balance so ascertained, with interest to the date of the entry of such decree, and shall order payment thereof to the defendant corporation by such administrator out of the assets of the estate. This will afford to the defendant corporation the form of relief sought by it.

There is nothing in the contention of the plaintiffs that the appeal of the defendants was too late. That appeal was filed on November 6, 1945, within twenty days after the actual entry of the final decree on October 19, 1945, though more than twenty days after the earlier date, October 1, 1945, "as of" which that final decree was entered. G. L. (Ter. Ed.) c. 214, § 19. The defendants could not lawfully be deprived of the full period of twenty days from October 19, 1945, in which to appeal. *Barnes* v. *Barnes*, 291 Mass. 383, 386, 387. Plainly the denial of the motion of the plaintiffs to dismiss that appeal was not erroneous. Moreover, the denial of that motion was neither an interlocutory nor a final decree from which an appeal would lie. *Carilli* v. *Hersey*, 303 Mass. 82, 87, 88. The appeal from the denial of the motion to dismiss the appeal is itself dismissed.

A new final decree is to be entered in accordance with this opinion, with costs to the plaintiffs.

*So ordered.*